UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MATHEW OLKIN, <br>     *Plaintiff*, <br><br> v. <br><br> MATTHEW VIVEIROS and HUNT & <br> VIVEIROS, LLC, <br>     *Defendants*. | )    CASE NO. 3:24-cv-00139 (KAD) <br> ) <br> ) <br> ) <br> ) <br> )    January 3, 2025 <br> ) |

**MEMORANDUM OF DECISION**
**RE: DEFENDANTS' MOTION TO DISMISS (ECF NO. 12)**

Kari A. Dooley, United States District Judge:

This action was brought by Plaintiff Mathew Olkin ("Plaintiff" or "Olkin"), *pro se*, against Defendant Matthew Viveiros ("Viveiros"), an attorney, and his law firm, Defendant Hunt & Viveiros, LLC ("Hunt & Viveiros") (collectively, "Defendants"). Plaintiff, also an attorney, alleges, *inter alia*, that Defendants breached an oral agreement with him to split legal fees in connection with litigation in Massachusetts state court, and that in so doing, Defendants violated both Connecticut and Massachusetts unfair trade practices statutes. Pending before the Court is Defendants' motion to dismiss this action for lack of subject matter and personal jurisdiction, which Plaintiff opposes. For the reasons that follow, the motion is GRANTED.

**Allegations and Procedural History**

Mathew Olkin is a Connecticut attorney proceeding *pro se*.[1] Compl., ECF No. 1, ¶ 1. Matthew Viveiros is a Massachusetts attorney who is the manager and sole member of Hunt & Viveiros, a Massachusetts law firm. *Id.* ¶¶ 2–3. In 2014, Olkin was retained by a non-party, Connecticut resident Steven Davidson ("Davidson"). *Id.* ¶¶ 6, 9. Davidson hired Olkin to

---

[1] "[A] lawyer representing himself ordinarily receives no . . . solicitude at all." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) (collecting cases).

represent him after he suffered injuries in a slip-and-fall in a cold-storage facility in Massachusetts in 2013. *Id.* ¶¶ 6–8. Olkin sought to negotiate a settlement for Davidson, but since he was not admitted to practice in Massachusetts, he informed Davidson that he may not be able to represent him in any case that may be filed. *Id.* ¶ 10. Olkin and Davidson agreed that if a case needed to be filed in Massachusetts, Olkin would help find local counsel to represent him. *Id.* ¶ 13.

After several months of unsuccessful settlement negotiations, after which the statute of limitations on Davidson's claim was close to expiring, Olkin recommended that Davidson file suit in Massachusetts. *See id.* ¶¶ 15–29. Olkin filed Davidson's lawsuit on December 8, 2016, in Massachusetts Superior Court, after being admitted *pro hac vice*. *Id.* ¶ 35. Several months later, in May 2017, Davidson retained Viveiros and his firm to take over his case, and he authorized Olkin to discuss the matter with Viveiros. *Id.* ¶¶ 36–37. On May 11, 2017, Viveiros called Olkin to discuss the division of their legal fees. *Id.* ¶ 39. Plaintiff alleges that they orally agreed that Viveiros would pay Olkin 30% of the fee that he earned from the case, and further, that they agreed to execute a written agreement to that effect during an in-person hearing in Massachusetts on October 31, 2017. *Id.* ¶¶ 39–40. However, they failed to execute such a written agreement. *Id.* ¶ 41.

In September 2020, Viveiros obtained a settlement for Davidson and collected a legal fee of $100,000. *Id.* ¶¶ 46–47. On October 7, 2020, Viveiros sent Olkin a letter and a check for $10,000, purporting to represent the total fee to which Olkin was entitled. *Id.* ¶ 48. Olkin cashed the check, but he disputed the fee amount during a phone call with Viveiros on November 1, 2020. *Id.* ¶ 50. On January 12, 2021, Olkin submitted a written demand to Viveiros, demanding that the Defendants either pay him the additional $20,000, or agree to submit the dispute to the Massachusetts Bar Association Legal Fee Arbitration Board. *Id.* ¶ 55. Viveiros rejected both of

Olkin's demands by letter on February 3, 2021, but included therein a check for an additional $5,819.04 (which Plaintiff did not accept). *Id.* ¶¶ 56–57, 62.

Plaintiff filed the present Complaint on February 2, 2024. He asserts violations of the Massachusetts Consumer Protection Law, Mass. Gen. Laws ch. 93, § 11 (Counts 1 and 2); violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.* (Counts 3 and 4); and unjust enrichment (Counts 5 and 6). Defendants jointly move to dismiss the Complaint for lack of subject matter and personal jurisdiction.

**Discussion**

**Subject Matter Jurisdiction**

The appropriate analysis for a facial challenge to subject matter jurisdiction, like the one raised by the Defendants, is similar to that required under Rule 12(b)(6). "When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it . . ., the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). The task of the district court is to determine whether, after accepting as true all material factual allegations of the complaint and drawing all reasonable inferences in favor of the plaintiff, the alleged facts affirmatively and plausibly suggest that the court has subject matter jurisdiction. *Id.* at 56–57.

Defendants move to dismiss under Rule 12(b)(1) on the basis that Plaintiff has failed to assert an amount in controversy over $75,000, and thus, the Court lacks subject matter jurisdiction under 28 U.S.C. § 1332(a). Mot. to Dismiss, ECF No. 12, at 4–6. District courts have jurisdiction over civil diversity suits "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Generally, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d

82, 87 (2d Cir. 1991) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)).  Indeed, "[i]t must appear *to a legal certainty* that the claim is really for less than the jurisdictional amount to justify a dismissal." *Id.*

Here, Plaintiff has asserted an amount in controversy in excess of $75,000.  Plaintiff seeks an unspecified amount of actual damages, and $30,000 in compensatory damages in *quantum meruit*, for Defendants' unjust enrichment.  Compl., ECF No. 1, at 15; Opp'n to Mot. to Dismiss, ECF No. 15, at 7 & n.2.  Plaintiff also seeks treble damages, attorney's fees, and costs, pursuant to the Massachusetts Consumer Protection Law, and actual and punitive damages under CUTPA.  Compl., ECF No. 1, at 15; Opp'n to Mot. to Dismiss, ECF No. 15, at 7.  These additional damages "may be included in determining whether the jurisdictional amount is satisfied." *A.F.A. Tours, Inc.*, 937 F.2d at 87.[2]  As Plaintiff has adequately alleged an amount in controversy sufficient to meet the diversity jurisdiction threshold, the Court next turns to the question of personal jurisdiction over the Defendants.

**Personal Jurisdiction**

When a defendant challenges the court's personal jurisdiction under Rule 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam).  Because neither party sought to conduct discovery or requested an evidentiary hearing, the Plaintiff need make only a *prima facie* showing of jurisdiction through his own pleadings and supporting affidavits. *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010).  In deciding a 12(b)(2) motion to dismiss, a court must "construe the pleadings and affidavits in the light most

---

[2] The Court recognizes that some of these claimed damages may be duplicative of each other and therefore not twice recoverable, but this possibility is not sufficient to defeat the showing necessary to invoke the Court's diversity jurisdiction.

favorable to plaintiffs, resolving all doubts in their favor." *Id.* (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)).

For a court to exercise personal jurisdiction over a defendant, (1) state law must authorize personal jurisdiction and (2) the exercise of jurisdiction must comport with constitutional due process principles. *Reich v. Lopez*, 858 F.3d 55, 62 (2d Cir. 2017) (general jurisdiction); *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 37 (2d Cir. 2001) (specific jurisdiction). "The first inquiry must be whether [Connecticut's] long-arm statute authorizes the exercise of jurisdiction under the particular facts of this case. Only if [the court] find[s] the statute to be applicable do[es] [it] reach the question whether it would offend due process to assert jurisdiction." *W. World Media, LLC v. Ikamobile Ltd.*, 809 F. Supp. 2d 26, 30 (D. Conn. 2011) (quoting *Lombard Bros., Inc. v. Gen. Asset Mgmt. Co.*, 190 Conn. 245, 250 (1983)) (alterations omitted).

Connecticut's long-arm statute with respect to non-resident individuals provides, in relevant part, that a court can exercise personal jurisdiction over a non-resident individual who:

> (1) Transacts any business within the state; (2) commits a tortious act within the state . . .; (3) commits a tortious act outside the state causing injury to person or property within the state . . .; [or] (4) owns, uses or possesses any real property situated within the state . . . .

Conn. Gen. Stat. § 52-59b(a). Connecticut courts have found that this general long-arm provision also applies to foreign LLCs. *See Matthews v. SBA, Inc.*, 89 A.3d 938, 960–61 (Conn. App. Ct. 2014) ("[O]ur general long arm jurisdiction provision, § 52-59b, rather than our corporate specific long arm provision, § 33-929, applies to foreign LLCs."); *see also Needle v. True N. Equity, LLC*, No. 3:19-CV-372, 2020 WL 1550219, at *3 (D. Conn. Apr. 1, 2020).

*Simonson v. Olejniczak* is instructive. No. 22-1219, 2023 WL 2941521 (2d Cir. Apr. 14, 2023) (summary order). There, a Connecticut plaintiff sued two Wisconsin attorneys, whom the

plaintiff had hired to litigate a case in Wisconsin state court. *Id.* at *1. In support of her argument that Connecticut courts had personal jurisdiction over these defendants, the plaintiff pointed to, among other things, the existence of a contract between the Wisconsin defendants and the Connecticut plaintiff, sustained and collaborative work with the Connecticut plaintiff, and fees paid to the Wisconsin defendants from her Connecticut bank account. *Id.* at *2. The Second Circuit affirmed the trial court's dismissal of the action finding that these allegations did not establish personal jurisdiction over the Wisconsin attorneys under Connecticut's long-arm statute. *See id.* "Connecticut courts have repeatedly found that mere representation of a Connecticut resident, and the necessary communications and business interactions that flow from that relationship, does not establish personal jurisdiction under the state's long-arm statute." *Id.* (collecting cases). That principle holds true here.

There is no allegation or claim that Viveiros traveled to Connecticut in connection with this legal matter, nor that Defendants solicited business in Connecticut. Mot. to Dismiss, ECF No. 12, at 3; *see Simonson*, 2023 WL 2941521, at *2. It is manifest that Plaintiff's claims stem from legal services that were performed in Massachusetts, for a personal injury case that arose out of events that took place in Massachusetts, and which was litigated in Massachusetts state court. Compl., ECF No. 1, ¶¶ 6–7, 35, 37. The formation of the alleged oral contract between Plaintiff and Viveiros occurred on a phone call on May 11, 2017, but with the expectation that the oral agreement would be memorialized at a hearing in Massachusetts on October 31, 2017. *Id.* ¶¶ 39–41. And indeed, when the agreement fell apart, Plaintiff himself demanded that Defendants either pay the remainder of his fee or agree to go before *Massachusetts's* fee arbitration board. *Id.* ¶ 55; *see, e.g.*, *Statek Corp. v. Coudert Bros. LLP*, No. 3:07-CV-456, 2018 WL 834227, at *14 (D. Conn. Feb. 12, 2018) (finding no personal jurisdiction where out-of-state attorney's "absence of physical

6

contacts underscore[d] that [his] representation of a few Connecticut-based clients in out-of-state proceedings did not constitute a transaction of business *within* the forum state" (quotation omitted)); *Green v. Simmons*, 919 A.2d 482, 487–88 (Conn. App. Ct. 2007) (finding no personal jurisdiction where out-of-state defendants only mailed two letters to Connecticut in connection with legal business); *Simonson v. Olejniczak*, No. 3:21-CV-1118, 2022 WL 6509428, at *8 (D. Conn. May 17, 2022) (Merriam, J.) (collecting cases), *aff'd*, No. 22-1219, 2023 WL 2941521 (2d Cir. Apr. 14, 2023).

Notwithstanding, Plaintiff argues that the Defendants committed tortious acts within the state of Connecticut, satisfying section 52-59b(a)(2). He relies upon three allegations: (1) that Defendants sent him a letter and check for a portion of legal fees on October 7, 2020, *id.* ¶ 48; (2) that Defendants discussed and rejected the existence of an oral contract via telephone on November 1, 2020, *id.* ¶ 50; and (3) that Defendants sent another letter and check in connection with the legal fees on February 3, 2021, *id.* ¶¶ 56–61. *See* Opp'n to Mot. to Dismiss, ECF No. 15, at 4. He characterizes these communications as "tortious," thereby purportedly satisfying the long-arm statute.[3] The Court disagrees. While these communications between the Defendants in Massachusetts and the Plaintiff in Connecticut occurred during the dispute between them, the communications themselves were not of the sort recognized by Connecticut courts as satisfying subsection (a)(2) of the long-arm statute. For example, in *Knipple v. Viking Communications, Ltd.*, 236 Conn. 602, 609–10 (1996), a case relied upon by Plaintiff, the defendant, a corporation which had solicited business in Connecticut, received an inquiry from plaintiffs as potential customers. Thereafter, the defendant made numerous false and fraudulent misrepresentations to the plaintiffs

---

[3] However, as the Connecticut Supreme Court has noted, "an action in tort is inappropriate where the basis of the suit is a contract, either express or implied." *Sullivan v. Thorndike*, 934 A.2d 827, 836 (Conn. App. Ct. 2007) (quoting *Macomber v. Travelers Prop. & Cas. Corp.*, 261 Conn. 620, 650 (2002)).

7

in Connecticut regarding its product and services. *Id.* Similarly, *Teleco Oilfield Services, Inc. v. Skandia Insurance Co.*, 656 F. Supp. 753, 755–56 (D. Conn. 1987), involved a corporate insurer defendant whose insured, the plaintiff, lived in Connecticut. Again, permitting the exercise of jurisdiction was based, in part, on the allegations that the defendant had engaged in both active and passive false representations transmitted to the plaintiff insured. In both of these cases, the communications themselves were essentially the *actus reus* of the cause of action and were sent for the purpose of inducing the recipient to act.

Here, the communications relied upon are not the *actus reus* of Plaintiff's statutory claims. While he points to them as evidence of a broader unscrupulous course of conduct, they do not rise to the level of tortious conduct "within the state," so as to satisfy section 52-59b(a)(2) of the long-arm statute. *See also Success Sys., Inc. v. Excentus Corp.*, 439 F. Supp. 3d 31, 55–56 (D. Conn. 2020) (distinguishing *Teleco* and noting that personal jurisdiction there was based on the underlying written agreement, which was "notably absent" in that case, where only an oral agreement was alleged); *Sanchez v. Corona*, 283 F. Supp. 2d 648, 654 & n.6 (D. Conn. 2003) (finding no personal jurisdiction where there were mailings into Connecticut, but "the [tortious] conduct asserted to be actionable" took place outside of Connecticut). *Contra Pro Performance Corp. Servs., Inc. v. Goldman*, 804 A.2d 248, 249–50, 254 (Conn. Super. Ct. 2002) (finding personal jurisdiction was present under subsection (a)(2) where out-of-state defendant called plaintiff in Connecticut to fraudulently obtain Super Bowl tickets, which was the core of plaintiff's complaint).

In sum, the Plaintiff has failed to make out a *prima facie* case that the Court has personal jurisdiction over any of the Defendants under Connecticut's long-arm statute.[4]

**Conclusion**

As explained above, Defendants' motion to dismiss (ECF No. 12) is GRANTED. The Clerk of Court is directed to close this matter.

**SO ORDERED** at Bridgeport, Connecticut, this 3rd day of January 2025.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[4] Because the Court concludes that personal jurisdiction is lacking under the long-arm statute, it need not determine whether the exercise of jurisdiction over the Defendants would comport with the principles of due process. *See W. World Media, LLC*, 809 F. Supp. 2d at 30.